FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 09, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KENNETH B.,[1] | No.  4:24-cv-5163-EFS |
| Plaintiff, | |
| v. | **ORDER REMANDING FOR AN AWARD OF BENEFITS** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Kenneth B. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits from

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

September 30, 2016[2] to March 20, 2023, and to remand for payment of benefits. The Commissioner asks the Court to affirm the ALJ's denial of benefits for this period, arguing that the ALJ's denial is supported by substantial evidence. As is explained below, for the same reasons the ALJ found Plaintiff was markedly limited in two Paragraph B functioning areas after March 21, 2023, Plaintiff was so markedly limited during the relevant period. The ALJ's finding otherwise is not supported by substantial evidence. This matter is remanded for an award of benefits from September 30, 2016, to March 20, 2023.

## I.     Background

Since childhood, Plaintiff has suffered from epileptic seizures.[3] He received two associate's degrees and worked for several years until stopping work in 2015 after suffering a seizure at work.[4]

---

[2] In his Reply, Plaintiff states he will "accept an established onset date of September 30, 2016," rather than the initially alleged January 1, 2016 alleged onset date. ECF No. 10 at 11.

[3] AR 466, 532.

[4] AR 205, 524, 752, 795.

1.    Treatment history

A September 30, 2016 treatment note reflects that Plaintiff was being followed for epilepsy, he reported that he had no seizures for a year, that he was taking 26 different supplements, and that he "believes God will heal him and his health issues."[5]

Several months later, in April 2017, a telephone encounter note states:

> Kenneth called stating he had a couple of seizures. The woman he is staying with called an ambulance. Apparently, she was scared afterwards and won't allow him back in the house. It sounds like he may have been postictal. He said that he had told her before just to talk to him about the work of god until he calms down. If I understood him correctly, he is in Florida. He said that someone contacted Dr. Powell last night. He would like to know what was said. There is no documentation of a phone call.[6]

In September 2017, Plaintiff had a follow-up evaluation for epilepsy with Dr. Powell, wherein:

> He denies any seizures. He stated that he had one episode where he was possessed by a demon. However, it was not an epileptic seizure. He says that he's been cured by the Lord of his epilepsy. He wants us to give him "Jesus oil" anyway.

---

[5] AR 848.

[6] AR 872.

DISPOSITIVE ORDER - 3

(Essentially, this is CBD oil.) I assured him that that would not be happening. In fact, I suggested to him that if he truly has been cured, why was he still taking the medication. This called his card. He backtracked and said that he is not supposed to come off the medicine yet because the Lord had not told him to do so. I told him that was good. He is planning on going around and healing all epilepsy patients by the laying on the hands. I spent most the appointment listening to him pontificate on this and other religious delusions.[7]

The following June 2018 Plaintiff called the epilepsy center:

. . . stating that "the Lord has healed his seizures." He asked for a test to prove to us that this is the case. I let him know that the only way to prove this is by taking him off meds while having him hooked up to an EEG in the hospital for a week. He isn't going to do that. He is sure that he can just stop his meds this summer when his friend is here visiting for a week and that will be proof enough. I let him know that that is a very dangerous idea for a number of reasons. The first is that unless he is in the hospital we always taper people off of meds and not stop them cold turkey, I let him know of sub clinical statues and SUDEP. He is undeterred because he is healed. I let him know that I would speak with you and get more advise, it sounds like he is going to do this one way or the other.[8]

During telephone encounters with the epilepsy center in August 2018, Plaintiff reported having seizures, restarting Keppra medication

---

[7] AR 870.

[8] AR 868.

DISPOSITIVE ORDER - 4

but then later also stating that he never stopped taking the zonisamide at night while only taking 1 pill of Keppra twice daily, and that "[t]he Lord wants him back on his medication."[9] One nurse wrote, "It took about 20 minutes to get a straight answer from Kenneth as far as what he is taking and even yet, I'm not entirely sure."[10] A treatment visit later that month states, "This was a convoluted visit as normal. We tried to review the history but he kept contradicting himself."[11]

During the follow-up treatment visit in August 2019, Dr. Powell wrote, "All of our 20-minute visit was spent in listening to his pontificating diatribe and his ultra-religiosity."[12] Plaintiff again reported that the "Lord has healed my brain," and he said that he stopped taking his seizure medicine 3 days prior.[13]

---

[9] AR 866.

[10] AR 866.

[11] AR 864.

[12] AR 843.

[13] AR 843.

DISPOSITIVE ORDER - 5

During the next year's follow-up visit with Dr. Powell in August 2020, Plaintiff presented as alert, with intact attention span and concentration, and an ability to follow commands.[14] However, he refused to go back on zonisamide but was willing to take levetiracetam.[15] Dr. Powell wrote:

> I reviewed past history with him. His previous medications have included Lamictal, Zarontin, Depakote, Dilantin, Keppra, gabapentin, Topamax and Zonegran. The only medications that he has available for his seizure type are Felbamate, Phenobarbital, Fycompa. None of these are ideal in this individual. I would strongly prefer not to use them. Felbatol and phenobarbital are too complicated for him to use, and have intolerable side effects. Laboratory monitoring also needs to be performed. I'm pretty sure that he would not be compliant with that. Fycompa can cause significant behavioral abnormalities. That is one thing that he does not need. He already has an edge to him, and is somewhat difficult to get along with.[16]

In January 2021, at the age of 60, Plaintiff applied for benefits under Titles 2 and 16, claiming disability beginning January 1, 2016,

---

[14] AR 842.

[15] AR 842.

[16] AR 842.

with a date last insured of December 31, 2020.[17] During his disability-application intake in March 2021, the interviewer noted:

> All dates and wages are real rough estimates. [Kenneth] had a difficult time remembering any dates or wages. He was also hard to keep focused and paranoia during his intake. [Kenneth] attends mental health on the west side of Washington. He could not tell me the city or facility of these records. [Kenneth] is willing to attend any CE's necessary for his claim. [Kenneth] has had numerous testings from all providers. He cannot remember all tests performed, so please request all testings from all providers.[18]

Also in March 2021, Plaintiff had a follow-up visit with Dr. Powell.[19] Plaintiff once again was not compliant with treatment directions and medications. He denied having seizures, although he was still having them. Dr. Powell advised that he was discharging Plaintiff as a patient for failure to maintain a therapeutic relationship, although he did refill Plaintiff's prescriptions for a year.[20]

---

[17] AR 722–46. As noted earlier, Plaintiff has modified the alleged onset date to September 30, 2016. ECF No. 10 at 11.

[18] AR 799.

[19] AR 840–41.

[20] AR 840.

Beginning in October 2021, Plaintiff's mother kept a log of the seizures that she witnessed or knew about since October 25, 2021 through May 2023: 5 seizures in 2021 since October 25, 2021; 33 seizures in 2022; and 8 seizures in 2023 through May 23, 2023.[21]

In May 2022, a behavioral health treatment note states that Plaintiff presented as polite but with symptoms consistent with cognitive impairment and delusional beliefs along with tangential speech and "word salad."[22] Plaintiff scored 6/30 on the Rowland Universal Dementia Assessment Scale, with a score of 22 or less being considered as possible cognitive impairment.[23]

On March 21, 2023, the date the ALJ found that disability began, Plaintiff was admitted to the intensive care unit for acute liver failure and kidney injury.[24] He presented as a poor historian with an altered mental status, and was pleasantly confused but easily spaced out. He

---

[21] AR 833–34.

[22] AR 908.

[23] AR 907–08.

[24] AR 456–59, 478, 995–96, 1013.

remained hospitalized for several weeks, during which time it was noted, amongst other observations, that:

- He answered all the orientation questions appropriately, although his conversation was somewhat tangential, and he appeared to have difficulty understanding certain concepts.[25]

- He was orientated and alert but confused and angry about being put back on Keppra.[26]

- He was agreeable but sometimes confused.[27]

- He had limited insight into deficits and a limited ability to problem-solve his living situation.[28]

When he was admitted to an adult care center in late April 2023, he largely passed the brief mental-status interview, except he did not

---

[25] AR 1091–94.

[26] AR 1264, 1277.

[27] AR 1302–03.

[28] AR 1344–45.

DISPOSITIVE ORDER - 9

1    recall after a delay one of the three words initially provided and he

2    believed that the Lord would heal him of his medical conditions.[29]

3         Plaintiff began dialysis treatment, but at times he was resistant

4    to receiving dialysis, and he still refused to take his epilepsy

5    medications at times. Over the next several months, he occasionally

6    returned to the hospital due to seizures, otherwise continuing to reside

7    at an adult care facility. In July 2023, a guardian and conservator were

8    appointed for Plaintiff.[30]

9         2.    Administrative process

10        Two years prior thereto, in August 2021, Plaintiff was denied

11   disability by the Social Security Administration.[31] He requested a

12   hearing before an ALJ, which was held by telephone in November 2023

13   with ALJ Deanna Sokolski.[32]

14

15   _____

16   [29] AR 1954–55, 2087, 2091.

17   [30] AR 762–63.

18   [31] AR 581–622.

19   [32] AR 507–50.

At the hearing, Plaintiff testified that since September 2023 he had resided at an adult home, which provided daily living assistance with housing, food, and medication.[33] Plaintiff testified that he did not have a definite plan of leaving the facility at a certain date and time but "just know that sometime in the future, I'll be going, doing a different job that I'm supposed to be doing, for [Jesus Christ]."[34] During Plaintiff's testimony, he had a difficult time tracking and answering questions about his prior work and his epileptic seizures at work.[35] Yet, Plaintiff testified that he did not feel that he had any difficulty with memory or his mental health.[36] In regard to a question about his relationship with the Holy Spirit, Plaintiff responded:

> What I'm saying is, is I know who I am, and I'm not concerned as far as what people think of me. And what I'm trying to say is that if you think I'm crazy, ask me. Sometimes I think I'm crazy. But -- for being here, at this place, or at any other place. But as far as what the Holy Spirit basically decides to say, or bring up, he chooses to do

---

[33] AR 514.

[34] AR 523.

[35] AR 524–33.

[36] AR 536.

1

2

that. That's not up to me. That's up the Christ. So when he
decides to do certain things, he'll do it. And he's not going to
tell me when things are going to happen, and he's just going
to do it.[37]

3

4

Months later, the ALJ issued a partially favorable decision,

finding Plaintiff disabled as of March 21, 2023.[38]  As to the sequential

5

disability analysis, the ALJ found:

6

7

- Plaintiff met the insured status requirements through

   December 31, 2020.

8

9

- Step one: Plaintiff had not engaged in substantial gainful

   activity since January 1, 2016.

10

11

- Step two: Since January 1, 2016, Plaintiff had the following

12

   medically determinable severe impairments: epilepsy, obesity,

   and impaired memory with cognitive impairment (beginning

13

   May 2022). Beginning on the established onset date of

14

   disability, March 21, 2023, Plaintiff had the following

15

16

17

[37] AR 537.

18

[38] AR 15–38. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-

19

step evaluation determines whether a claimant is disabled.

additional severe impairments: end stage renal disease on dialysis, kidney disease, chronic liver disease, and psychosis. Since March 21, 2023, Plaintiff's impairments met the criteria of Listings 12.02 and 12.03.

- Step three: Prior to March 21, 2023, the date Plaintiff became disabled, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Prior to March 21, 2023, Plaintiff had the RFC to perform light work except:

  never climb ladders, ropes, or scaffolds; occasionally crouch, crawl and kneel; can perform a job that does not require commercial driving; and avoid all exposure to workplace hazards such as unprotected heights, dangerous moving machinery and large bodies of water; and can perform simple routine tasks in an environment involving simple work related decisions and occasional work place changes and occasional interaction with supervisors and coworkers and no interaction with the public as part of the job duties.

1   • Step four: prior to March 21, 2023, Plaintiff could perform past

2       relevant work as a mail room clerk.[39]

3       Plaintiff timely requested review of the ALJ's decision by the

4   Appeals Council and now this Court.[40]

5                       **II.    Standard of Review**

6       The ALJ's decision is reversed "only if it is not supported by

7   substantial evidence or is based on legal error" and such error

8   impacted the nondisability determination.[41] Substantial evidence is

9   "more than a mere scintilla but less than a preponderance; it is such

10

11  _____

12  [39] AR 18–30.

13  [40] AR 1–6.

14  [41] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §

15  405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ),

16  *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that

17  the court may not reverse an ALJ decision due to a harmless error—

18  one that "is inconsequential to the ultimate nondisability

19  determination").

DISPOSITIVE ORDER - 14

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[42]

## III.   Analysis

As to the period before March 21, 2023, Plaintiff argues the ALJ mischaracterized the record and thereby erred in the step-three listings analysis, when discounting Plaintiff's symptoms before March 21, 2023, and at step five. The Commissioner opposes Plaintiff's motion and maintains that the ALJ's findings are supported by substantial evidence. As is explained below, the ALJ consequentially erred at step three.

---

[42] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1    **A.    Step Three (Listings): Plaintiff establishes consequential**

2    **error.**

3        The ALJ found that Plaintiff met or equaled Listings 12.02 and

4    12.03 on March 21, 2023, but not prior thereto. Plaintiff argues that

5    the basis for the ALJ's listings findings after March 21, 2023, likewise,

6    require the ALJ to have found that Plaintiff met or equaled Listings

7    12.02 and 12.03 since September 30, 2016. The Commissioner argues

8    that substantial evidence supports the ALJ's step-three findings. As is

9    explained below, substantial evidence does not support the ALJ's step-

10   three decision to treat separately the periods before and after March

11   21, 2023, for purposes of Listing 12.03 and 12.03.

12       1.    <u>Standard</u>

13       Listing 12.02 applies to neurocognitive disorders, and Listing

14   12.03 applies to schizophrenia spectrum and other psychotic disorders.

15   To satisfy the paragraph B criteria of Listing 12.02 or 12.03, a

16   claimant's mental impairments must result in at least one extreme or

17   two marked limitations in the following broad areas of functioning:

18   understanding, remembering, or applying information; interacting with

19   others; concentrating, persisting, or maintaining pace; and adapting or

managing oneself.[43] A "marked" limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.[44] An "extreme" limitation is the inability to function independently, appropriately or effectively, on a sustained basis.[45]

## 2.    The ALJ's Step-Three Findings

After March 21, 2023, the ALJ found the criteria for Listings 12.02 and 12.03 were satisfied, offering the following findings:

> The "paragraph A" criteria have been satisfied because the claimant has delusions, disorganized thinking/speech, and significantly impaired executive functioning. The "paragraph B" criteria have been satisfied because the claimant's impairments have caused a moderate limitation in understanding, remembering, or applying information, a marked limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a marked limitation in adapting or managing oneself.[46]

---

[43] See 20 C.F.R. Part 404, Subpt. P, App.'x 1, § 12.02(B).

[44] 20 C.F.R. Part 404, Subpt. P, App.'x 1, § 12.00F2(d).

[45] 20 C.F.R. Part 404, Subpt. P, App.'x 1, § 12.00F2(e).

[46] AR 29.

To support these findings, the ALJ highlighted that Plaintiff had been hospitalized in March 2023, he was later found to not have capacity, and that he "at times, refused hemodialysis and medication."[47] The ALJ cited to medical records reflecting that at times Plaintiff was delusional, was a poor historian, had significantly impaired executive functioning skills, indicated grandiose idealizations in regard to Jesus Christ's utilization of him to communicate to others, and he was illogical with impaired reasoning abilities. In addition, the ALJ cited other medical records showing Plaintiff's low motivation to participate in therapy, reduced insight into his cognitive deficits, slow speech, and non-linear train of thoughts. The ALJ highlighted that Plaintiff continued to have seizures through 2023 and had intermittent medication compliance.

In comparison, prior to March 21, 2023, the ALJ found Plaintiff did not meet or equal Listing 12.02's paragraph B criteria because he

---

[47] AR 29.

1  had only moderate limitations in each of the four broad functioning

2  areas.[48] As to the four functioning areas, the ALJ found:

3    • understand, remember, or apply information: Plaintiff's

4      symptoms were consistent with a cognitive impairment as he

5      was unable to recall recent and past history although he was

6      able to complete adult daily living tasks.

7    • interact with others: Plaintiff was noted to be somewhat

8      difficult to get along with, his speech was tangential/word

9      salad, he demonstrated poor physical proximity boundaries

10     and delusional beliefs although he was overall polite, and on

11     another occasion, he was alert, orientated, and in no distress

12     with normal speech and demeanor.

13   • concentrate, persist, or maintain pace: that on one occasion,

14     Plaintiff's mood was anxious, his insight impaired due to poor

15     recollection, he was unable to stay on topic, and had difficulty

16   _____

17   [48] AR 22–23. The ALJ did not address Listing 12.03 nor whether

18   Plaintiff met the paragraph A criteria for the pre-March 21, 2023

19   period.

finding appropriate and expressive words; on another occasion, he had intact attention and concentration and followed commands well.

- Adapt or manage oneself: Plaintiff did not take his epilepsy medication as prescribed and was discharged from Dr. Powell's care, he demonstrated religious delusions, and on one occasion he was alert, oriented, and in no acute distress with normal speech and normal demeanor.[49]

3.    <u>Analysis</u>

The cited records—and the records as a whole—do not serve as substantial evidence to support the ALJ's finding that Plaintiff did not satisfy paragraph B criteria prior to March 21, 2023, but did thereafter. Although Plaintiff interacted with treatment providers much less before March 21, 2023, given that thereafter he was hospitalized and engaged in dialysis and stayed in adult family home care, the pre-March 21, 2023 record is consistent with the latter records in that Plaintiff suffered from delusions his ability to be a sound historian and

---

[49] AR 22–23.

1    impacting his insight and judgment, including his ability to make

2    sound decisions about taking his epilepsy medication.

3          As the above summary of medical records reveals, since

4    September 30, 2016, Plaintiff believed that God would heal his health

5    issues—this was not simply a devotedly held religious belief, but

6    instead, as the longitudinal records show, was a delusion. On several

7    occasions, Plaintiff stopped taking his medications due to these

8    delusions. That Plaintiff at times was noted as alert, orientated, and in

9    no acute distress and with normal speech and demeanor does not

10   conflict with the medical records showing that Plaintiff was markedly

11   limited in interacting with others because of his psychosis and

12   cognitive impairment. As summarized above, the pre-March 21, 2023

13   medical record shows that Plaintiff was unable to focus on his

14   treatment during his epilepsy appointments, instead spending most of

15   the time sharing his religious delusions, resulting in "convoluted visits"

16   being the "normal."[50] He was argumentative, exhibited an edge, and

17   had difficulty getting along with providers. Based on the pre-March 21,

18   

19   [50] *See, e.g.*, AR 846, 865, 844.

2023 medical record, substantial evidence does not support the ALJ's decision to find that Plaintiff was only moderately limited in his ability to interact with others, as compared to markedly limited in his ability to interact with others after March 21, 2023.

In addition, the record shows that his delusion that the Lord would heal him markedly impacted his ability to adapt or manage himself. This delusion caused him to be erratic in his medication compliance, ultimately leading to his care provider ceasing the therapeutic relationship. Further, with a cognitive score of 6/30 on a memory exam, it was clear that Plaintiff's insight was impaired also due to poor recollection, and he had difficulty staying on topic and expressing himself. Again, that Plaintiff on a few occasions appeared as orientated, alert, and not in distress and conversant does not serve as substantial evidence to outweigh the longitudinal record that shows Plaintiff was markedly impacted in his ability to adapt and manage himself, including his own medical care. For instance, about 6 weeks after the medical record relied by the ALJ for the normal mental-status findings, and notwithstanding a reported ability to complete his adult

1  living tasks,[51] Plaintiff had a memory screening done on which he

2  scored 6/30, with a score of 22 or less indicating possible cognitive

3  impairment. He was observed with impaired insight due to poor

4  recollection, was unable to stay on topic, and had difficulty finding

5  appropriate and expressive words, although he was orientated to time

6  and season.[52] A week later, Plaintiff did not recall attending the

7  memory-screening appointment and he presented as tangential in his

8  speech, with word salad, and delusional beliefs, although he was

9  polite.[53] Moreover, even after March 21, 2023, there were occasions

10  that Plaintiff was orientated, alert, not in distress, and conversant.[54]

11  _____

12  [51] AR 22–23 (citing AR 903 (Ex. 7F/3), which is a medical record from

13  an emergency visit after a seizure, and which indicated that Plaintiff

14  reported that even though he was taking his seizure medication he had

15  had 4 seizures in the last month); AR 906–08.

16  [52] AR 906–08.

17  [53] AR 2047–49.

18  [54] *See, e.g.*, AR 1091 (March 27, 2023: answers orientation questions

19  appropriately but appears to have difficulty understanding certain

Overall the record reflects that Plaintiff's mental health and cognitive abilities waxed and waned, and when his symptoms waxed he was at least markedly impaired in his abilities to interact with others and adapt or manage himself.

Therefore, the ALJ's finding that Plaintiff was only moderately impaired in these Paragraph B areas of functioning before March 21, 2023, is not supported by substantial evidence.[55]

---

concepts); AR 1266 (Apr. 7, 2023: not in acute distress, alert, and orientated to person, place, and time); AR 1354 (April 16, 2023: talking to provider appropriately and not in distress); AR (June 26, 2023: not reporting any difficulties meeting his needs, is friendly and open to the assessment completion, denies depression and anxiety, was alert and orientated to person, place, and time, while also reporting that God is responsible for him being on dialysis so that he can fulfill his assigned task on earth and that he has the bible memorized in his mind).

[55] Because of the ALJ's step-three error, the Court need not address Plaintiff's remaining claims.

1

**B.    Remand: award benefits.**

2

The parties disagree as to whether given this error a remand for

3

payment of benefits or a remand for further proceedings is necessary.

4

Although remand for further administrative proceedings is the usual

5

course when a harmful error occurs in the administrative proceeding,

6

this is a rare circumstance where an award of benefits is appropriate.[56]

7

No additional medical records are needed for the at-issue period.

8

The medical records clearly reflect that Plaintiff's abilities to interact

9

with others and adapt or manage himself before March 21, 2023 were

10

as markedly limited as they were after March 21, 2023. That Plaintiff

11

suffered more severe health complications resulting from his kidney

12

and liver disease after March 21, 2023, and therefore had more contact

13

with medical providers, resulting in more treatment records, does not

14

lessen that Plaintiff's mental-health impairments impacted his ability

15

to interact with others, make decisions, and adapt or manage himself

16

———————————

17

[56] *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099

18

(9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729,

19

744 (1985)).

since at least September 30, 2016. Accordingly, the ALJ's step-three post-March 21, 2023 listings findings apply equally to the period from September 26, 2016 to March 20, 2023.

## IV.    Conclusion

Plaintiff establishes the ALJ erred and that an award of benefits—rather than a remand for re-evaluation—is appropriate. Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for immediate calculation and award of benefits** from **September 26, 2016, to March 20, 2023.**

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 7**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 9th day of July 2025.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 26